ZEIGLER, Respondent, v. RYAN, Appellant.

(271 N. W. 767.)

(File No. 7948. Opinion filed March 4, 1937.)

See, also, Zeigler v. Ryan 63 S. D. 597, 262 N. W. 200.

*Atwater & Helm,* of Sturgis, for Appellant.
*Dan McCutcheon,* of Belle Fourche, for Respondent.

RUDOLPH, P. J. This action arises out of an automobile accident ocurring in the State of Minnesota on the 8th day of October, 1933. The plaintiff and defendant are old acquaintances living in Sturgis, S. D. The defendant contemplated a trip to Chicago, Ill. The plaintiff was desirous of making a trip to the State of Wisconsin, and it was agreed between the plaintiff and defendant that the two would make the trip in defendant's car with the understanding that the plaintiff was to pay a part of the expenses and do a part of the driving. The trip was made east without trouble and plaintiff left the defendant in Wisconsin. Defendant drove on into Chicago and stayed there about two weeks. While there defendant became acquainted with one Kennedy, who accompanied defendant on the trip back to Sturgis. The defendant and Kennedy left Chicago and picked up the plaintiff in Wisconsin. The party of three left Veroque, Wis., about 2 o'clock in the afternoon of October 8th. The day was foggy and rain was falling. The defendant was driving when the party left Veroque. At a point about twenty-five miles before the place the accident

occurred, Kennedy at the request of the defendant took over the driving and was driving at the time of the accident. The plaintiff was sitting in the front seat next to Kennedy, and defendant was in the rear seat. The road over which the car was being driven was black top or tarvia. As Kennedy was driving he started down a hill which was described in the evidence as from four to six hundred feet long. At the foot of this hill the road turned to the right, and on this turn there was a new piece of surfacing which was about one hundred feet long, and described as being "more slippery" than other portions of the road. Kennedy was driving from thirty to thirty-five miles an hour. While driving down this hill Kennedy passed a car which was coming up the hill at a high rate of speed. To avoid a collision it was necessary that Kennedy pull far over to his right-hand side of the road. As Kennedy attempted to regain his correct position on the road the car began to skid. When the car commenced skidding, Kennedy "slapped on the brakes." The car continued its skidding "a good twenty-five feet," rolled completely over, and about seventy-five feet from where the skidding commenced struck and broke a telephone pole six inches in diameter. The plaintiff was severely injured. Verdict and judgment were in favor of the plaintiff, and defendant has appealed.

█ The above facts are without dispute in this record. The trial court instructed the jury that this accident occurring in Minnesota, liability was, to be determined under the laws of that state, and, if the jury found that Kennedy was employed by defendant to drive his automobile and that Kennedy was negligent in the operation of the automobile, which negligence, if found, proximately caused the accident, then the plaintiff could recover. These instructions were not excepted to and became the law of the case.

Defendant has presented and argued five assignments of error, as follows: First, Kennedy was not negligent; second, defendant was contributorily negligent; third, defendant assumed the risk of the injury sustained; fourth, plaintiff and defendant were engaged in a joint adventure; and, fifth, refusal of the court to give requested instructions. The case being submitted to the jury without exception to the court's instructions, the first four assignments necessarily question the evidence and the sufficiency thereof.

██ ██ We consider first the question of whether there is sufficient· evidence in the record upon which to submit the question of Kennedy's negligence to the jury. From the facts it appears that the accident was due to the skidding of the automobile as it was regaining its correct position on the highway and attempting to make the turn at the bottom of the hill. The mere fact that an automobile skids on a slippery pavement does not in itself constitute evidence of negligence on the driver's part or render the res ipsa loquiture doctrine applicable. Davis v. Brown, 92 Cal. App. 20, 267 P. 754; Linden v. Miller, 172 Wis. 20, 177 N. W. 909, 12 A. L. R. 665; Barret v. Caddo Transfer & Warehouse Company, 165 La. 1075, 116 So. 563, 58 A. L. R. 261; Annotation in 58 A. L. R. 264. As stated in 5 Am. Jur. 654: "The inquiry in cases of skidding is as to the driver's conduct previous to such skidding. The speed of the automobile prior to the skidding and the care in handling the automobile, particularly in the application of brakes, are factors to be considered in determining whether or not there was an exercise of due care." Kennedy was confronted with driving on a wet, slippery pavement. He proceeded down the hill at a speed from thirty to thirty-five miles an hour, which speed he was driving when he was forced to give a major portion of the road to an oncoming automobile. There was no obstruction of Kennedy's view, and the condition with which he was confronted as he drove down this hill including the turn in the road could or should have been observed by him. There was no attempt to slacken the speed of the automobile prior to meeting the oncoming car. According to Kennedy's own testimony he passed that car going at a speed of about thirty miles an hour, and, when the car began skidding, it was going that fast. Kennedy further testified that when the skidding commenced he "jammed on the brakes." The jury could readily conclude that driving conditions at the time of this accident were hazardous. Whether Kennedy met these conditions as an ordinarily prudent man would meet them, we believe, must be left for the jury. The fact that the car skidded twenty-five feet, turned completely over, and then struck a telephone pole seventy-five feet away from the point where the skidding commenced was the undisputed evidence before the jury. That the car performed in the unusual manner of skidding and rolling

seventy-five feet, with sufficient momentum to break a telephone pole at the end of its journey, is strongly indicative of lack of control and unreasonable speed in view of the surrounding circumstances and condition of the highway, at least it might be so considered by the jury. See Oakes v. Van Zomeren, 255 Mich. 372 238 N. W. 177.

Whether Kennedy acted in the use of his brakes as an ordinarily prudent man would act under similar circumstances was also, we believe, a question for the jury. Appellant contends that no negligence can be charged against Kennedy for "jamming on his brakes" for the reason that at the time an emergency had arisen. The trial court instructed the jury regarding degree of care required of a person in acting in an emergency. There is ample evidence in this record from which the jury might conclude under these instructions that Kennedy, in the use of his brakes, failed to use the degree of care requird.

Obviously, cases involving injury due to the skidding of an automobile are dependent upon the particular facts shown. However, the following cases each disclose a set of facts in many respects similar to those here involved, and in each instance the question of negligence of the driver was held to be a jury question: Loftus v. Pelletier, 223 Mass. 63, 111 N. E. 712; Ortwein v. Droste, 191 Ky. 17, 228 S. W. 1028; Oakes v. Van Zomeran, supra; Ledet v. Gottleber (La. App.) 143 So. 71; Davis v. Brown, 92 Cal. App. 20, 267 P. 754; Barret v. Caddo Transfer & Warehouse Company, supra.

The next assignment of error goes to the contributory negligence of the plaintiff. Appellant contends that the evidence discloses that plaintiff was contributorily negligent as a matter of law, and that there was no issue to submit to the jury in this regard. This question is raised by appellant's motion for a directed verdict. That motion, in so far as it relates to the contributory negligence of the plaintiff, is as follows:

"That if there were negligence upon the part of the defendant, that the plaintiff contributed thereto by reason of the fact that the evidence of the plaintiff shows that he saw the new patch of road for a distance of some four or five hundred feet, and that he failed to warn the driver of the car of any approaching danger.

"It further appearing from the evidence that the plaintiff is an experienced driver of automobiles and has had a great many years experience and many more years experience in driving than the driver of the defendant's car on the occasion of the accident."

Generally speaking, of course, the question of contributory negligence is a question of fact for the jury. It is only where undisputed facts are of such a nature that reasonable men could not differ as to whether conduct conforms to established standards that the question becomes one for the court. Ulrikson v. Chicago, Milwaukee, St. Paul & P. Ry. Co., 64 S. D. 476, 268 N. W. 369. With reference to this new piece of paving, which appellant in his motion contends should have been called to the attention of Kennedy, plaintiff testified: "I didn't say anything to Kennedy about it. I didn't know it was a new patch of road. I didn't know until I reached it that that was a new patch of road." Clearly, the jury could believe that plaintiff foresaw no danger from this new piece of road, and foreseeing no danger there was no reason for calling it to Kennedy's attention. Appellant seems to assume that it was this new piece of paving that caused the car to skid, but we do not so conclude after a careful reading of this record. The record discloses that the car commenced skidding immediately after meeting and passing the oncoming car. The testimony of the plaintiff is to the effect that this oncoming car was met about halfway down the hill, and that the new pieces of paving commenced at the foot of the hill some distance from the place where the car commenced to skid. As stated above, we conclude that this jury could have reasonably found that the speed and manner in which Kennedy negotiated this hill, passed and met the other car, and the use he made of his brakes under all of the conditions surrounding him, constituted negligence. Only seconds elapsed from the time this car started its descent of the hill until the accident occurred, and we know of no established standard of conduct to set up for the guest passenger under these circumstances. Reasonable men might differ upon the question of what should be the conduct of the guest passenger. For this court to step in and say that this plaintiff should, under the circumstances here presented, conform himself to an established standard of conduct, would be assuming that some

established standard of conduct for the plaintiff to follow, under the circumstances here presented, actually exists. We know of no such standard. The question was properly submitted to the jury.

■ Appellant's next assignment of error is based upon that part of his motion for a directed verdict which is as follows:

"That the evidence shows that the accident or injury to the plaintiff was merely the result of one of the hazards that the plaintiff assumed when he undertook to make the ride with the defendant, Ryan.

"That the accident was just one of the unavoidable occurrences common to and part of the hazards of automobile driving, and that the natural hazard was not in any way increased by any act of negligence upon the part of the defendant or his driver."

This court being of the opinion that the question of the negligence of the driver was a question for the jury, and the jury having resolved that question against appellant, all issues raised by this assignment of error under the motion for a directed verdict are disposed of.

■ ■ The next assignment of error attempts to raise the question of whether or not this was a joint adventure engaged in by the plaintiff and defendant. There was no request for an instruction to the jury upon this issue and the issue was not in any way raised by defendant's motion for a directed verdict. However, assuming that the issue is properly before this court, we conclude that, at the most, it was a jury question and made such by the testimony of the defendant himself when he testified positively that it was he who directed who should drive. Defendant testified with reference to the change of drivers made a short time before the accident occurred: "I said one of you other fellows can drive; Ziegler was sitting alongside of me and he offered to drive and I said no; Kennedy ain't done anything today, and you can drive tonight, you are a better night driver." From this. evidence the jury could reasonably conclude that, even though plaintiff was to pay a part of the expenses and do a part of the driving, the control and management of the car was left to the defendant, the owner thereof. "To constitute a joint enterprise between a passenger and the driver of an automobile, there must be such a community of interest in the operation as to give each an equal

right of control." Berry, Law of Automobiles, vol. 5, p. 207, and the many cases there cited.

 We have carefully considered the instructions of the court to the jury and are of the opinion that all matters contained in the requested instructions were covered in the court's instructions as given.

The judgment and order appealed from are affirmed.

POLLEY, ROBERTS, and WARREN, JJ., concur.

SMITH, J., not sitting.