#24690-a-BARNETT, Circuit Judge
**2008 SD 90**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ABDELAZIZ BADDOU,                              Plaintiff and Appellant,

    v.

CARLA JEAN HALL,                              Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOHN J. DELANEY
Judge

\* \* \* \*

JON J. LAFLEUR of
LaFleur, LaFleur & LaFleur, PC          Attorneys for plaintiff
Rapid City, South Dakota                and appellant.

GREGORY G. STROMMEN of
Clayborne, Loos, Strommen & Sabers LLP  Attorneys for defendant
Rapid City, South Dakota                and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 21, 2008

OPINION FILED 9/17/08

#24690

BARNETT, Circuit Judge

[¶1.] Abdelaziz Baddou (Baddou) filed suit against Carla Jean Hall (Hall) alleging negligence arising out of an accident in which Hall's vehicle struck the rear end of Baddou's vehicle. The case was tried to a jury which found no negligence. Baddou appeals from an order denying his motion for judgment as a matter of law and his motion for new trial. We affirm.

FACTS AND PROCEDURAL HISTORY

[¶2.] On January 21, 2004, Baddou was driving south on Elm Street in Rapid City, South Dakota. Elm Street is a two lane road with no turn lanes. Baddou activated his left turn signal and stopped while waiting for the oncoming traffic to clear. Before he could turn left, Baddou was struck from behind by Hall's vehicle.

[¶3.] Hall testified that she had been following Baddou's vehicle for approximately three blocks, at a distance of "probably one car length," and at a speed of approximately 25 miles per hour. Hall was on her way to pick up school children. As she headed south on Elm, Hall slowed down somewhat to watch out for children. At the moment before impact, Hall looked left to observe school children and make sure they were not going to dart out in front of her vehicle. When she looked back at the road ahead, Hall realized Baddou had stopped. Hall applied her brakes and veered right, but was too late to avoid collision. The left front of Hall's vehicle struck the right rear bumper of Baddou's vehicle.

[¶4.] The accident investigator from the Rapid City Police Department made a notation on his report indicating "Fault: driver 1 - rear ended legally stopped veh. [sic] waiting to turn." However, the officer did not issue a ticket to either driver.

#24690

The larger box in the report which asks the officer "Citation Charge?" was left blank and the small interior "No" box was checked with an "X."

[¶5.] Hall filed a pretrial motion in limine to keep out the officer's notation of "Fault: driver 1 . . .." The motion was granted and the "fault" quote was redacted from the report. Hall also filed a motion to preclude the mention of the issuance or non-issuance of a citation, but withdrew the motion at hearing. The court considered that motion moot because no citation was issued against either driver.

[¶6.] During trial, Baddou offered the accident report as redacted. Notably, Baddou's exhibit still contained the empty citation box with the "No" marked with an "X." During closing argument, Hall's attorney commented on Baddou's exhibit and its absence of any citation by the officer against Hall. Baddou timely objected. The court overruled the objection stating that "[t]he exhibit is in evidence and whatever the exhibit says is certainly available to the jury to consider." A few moments later at the conclusion of Hall's closing argument, Baddou renewed the motion and argued at the bench on the record. The court reconsidered and gave an oral curative instruction:

> The issue comes up with the question of whether or not a citation was issued. I don't have the officer here. The record would indicate from the ticket – from the report that no citation was given. I believe counsel would confirm that.
>
> I would tell you, and advise you, that the issuance or non-issuance of a citation by the officer on the scene does not establish either the presence of negligence by the issuance of a citation nor the absence of negligence by the nonissue of a ticket or citation. Those matters are separate and distinct from, much like the insurance I mentioned

earlier. It's not relevant. What the officer thought or didn't think or what the officer did then or did later, if anything.

The question is for you, would a reasonable person under those circumstances have acted in the way that the parties did. Your decision on that matter controls the outcome. Not whether an officer issued a citation or not.

[¶7.]     In its final jury instructions, the court also instructed the jury that arguments of counsel were not evidence. Baddou's motion for new trial based upon the comments by Hall's attorney during closing argument was denied.

[¶8.]     The jury found no negligence on the part of Hall. Thereafter Baddou filed a motion for judgment as a matter of law. Baddou claimed that Hall's actions were negligence per se. The court denied the motion and stated that whether or not Hall had been following too closely was a fact question for the jury.

[¶9.]     Baddou contends that there is insufficient evidence to support the verdict based upon the same arguments offered on the motion for judgment as a matter of law. Baddou also contends that the court should have instructed the jury on lost earning capacity. The court held that Baddou had failed to offer any evidence on that point and was not entitled to the instruction.

[¶10.]    Baddou's issues on appeal are:

Whether Baddou was entitled to judgment as a matter of law based upon a claim of negligence per se.

Whether sufficient evidence existed to support the jury verdict for Hall.

Whether Baddou is entitled to a new trial based upon Hall's closing argument.

> Whether Baddou is entitled to a new trial based upon the court's refusal to instruct the jury on lost earning capacity.

## STANDARD OF REVIEW

[¶11.] We review the court's denial of a motion for directed verdict under the abuse of discretion standard. Christenson v. Bergeson, 2004 SD 113, ¶ 10, 688 NW2d 421, 425 (citing Gilkyson v. Wheelchair Express, Inc., 1998 SD 45, ¶ 7, 579 NW2d 1, 3 (citing Bland v. Davison County, 1997 SD 92, ¶ 26, 566 NW2d 452, 460)). When reviewing motions for judgment as a matter of law or a directed verdict, we examine the evidence in a light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences fairly drawn from the evidence. Denke v. Mamola, 437 NW2d 205, 207 (SD 1989) (citing Carlson v. First Nat. Bank, 429 NW2d 463, 466 (SD 1988); Kreager v. Blomstrom Oil Co., 379 NW2d 307, 310 (SD 1985); Koupal v. Anton, Inc. v. Wieszorek, 375 NW2d 639, 640 (SD 1985); Sabag v. Continental South Dakota, 374 NW2d 349, 355 (SD 1985)). If there is any substantial evidence to sustain the cause of action or defense, it must be submitted to the finder of fact. Id. (citing Baldwin v. First Nat. Bank of Black Hills, 362 NW2d 85, 88 (SD 1985)). This only occurs when the evidence is so one-sided that reasonable minds can reach no other conclusion. Jensen v. Pure Plant Food Intern, Ltd., 274 NW2d 261, 265 (SD 1979) (citing Lang v. Burns, 77 SD 626, 630, 97 NW2d 863, 866 (1959)).

[¶12.] Denial of a motion for new trial is reviewed under the abuse of discretion standard. Bridgewater Quality Meats, L.L.C. v. Heim, 2007 SD 23, ¶ 10, 729 NW2d 387, 392. An abuse of discretion occurs only if no judicial mind, in view

of the law and circumstances of the particular case, could reasonably have reached such a conclusion. Kappenman v. Stroh, 2005 SD 96, ¶ 24, 704 NW2d 36, 42 (quoting Bauman v. Auch, 539 NW2d 320, 325 (SD 1995)). "The party alleging error on appeal must show error affirmatively by the record, and not only must the error be demonstrated, but it must also be shown to be prejudicial error." Tovsland v. Reub, 2004 SD 93, ¶ 15, 686 NW2d 392, 398; Morrison v. Mineral Palace Ltd. Partnership, 1998 SD 33, ¶ 10, 576 NW2d 869, 872. In cases where trial misconduct is urged as grounds for a new trial, the aggrieved party must convince this Court that there has been a miscarriage of justice. Schoon v. Looby, 2003 SD 123, ¶ 18, 670 NW2d 885, 891.

[¶13.] As for claims of insufficient evidence, the trial court has broad discretion on whether to grant a new trial. We examine the evidence in a light most favorable to the verdict. The prevailing party benefits from all reasonable inferences. If there is competent evidence to support the verdict, it must be upheld. Rogen v. Monson, 2000 SD 51, ¶ 18, 609 NW2d 456, 460-61; SDCL 15-6-50(a); Christenson, 2004 SD 113, ¶ 22, 688 NW2d at 427.

[¶14.] "While other jurisdictions have adopted a presumption of negligence in rear-end accidents, we have so far declined to do so." Steffen v. Schwan's Sales Enterprises, Inc., 2006 SD 41 ¶ 9, 713 NW2d 614, 618 (citing Christenson, 2004 SD 113, ¶ 33, 688 NW2d at 429). Instead we have required a plaintiff to plead and prove the negligent conduct of the defendant in a rear-end accident. The mere fact an accident happened creates no inference that it was caused by someone's negligence. Id.

[¶15.] With regard to curative instructions, we presume that juries understand and abide by instructions. First National Bank of Minneapolis v. Kehn Ranch, Inc., 394 NW2d 709, 720 (SD 1986); Fjerstad v. Sioux Valley Hospital, 291 NW2d 786, 788 (SD 1980); Baker v. Jewell, 77 SD 573, 580, 96 NW2d 299, 304 (1959).

[¶16.] Instructions to the jury must be based upon evidence adduced and issues raised at the trial. State v. Johnson, 320 NW2d 142, 147 (SD 1982).

ANALYSIS AND DECISION

ISSUE ONE

[¶17.] **Whether Baddou was entitled to judgment as a matter of law, based upon a claim of negligence per se.**

[¶18.] Baddou claims that the evidence was "undisputed" that Hall violated a safety statute, SDCL 32-26-40, which provides:

> The driver of a motor vehicle may not follow another
> vehicle more closely than is *reasonable and prudent,*
> having due regard for the speed of such vehicles and the
> traffic upon and condition of the highway. A violation of
> this section is a Class 2 misdemeanor. (emphasis added).

Baddou argues that we have previously adopted a *per se* rule in connection with rear-end accidents, or collisions with a stationary object in its rightful place.

[¶19.] Baddou cites several cases in support of his per se argument. In *Dartt v. Berghorst*, this Court held that "violation of a safety statute is negligence as a matter of law unless it is legally excused." 484 NW2d 891, 895 (SD 1992) (citing Stevens v. Wood Sawmill, Inc., 426 NW2d 13, 15 (SD1988); Zakrzewski v. Hyronimus, 81 SD 428, 432, 136 NW2d 572, 574 (1965); Albers v. Ottenbacher, 79 SD 637, 641-42, 116 NW2d 529, 531 (1962); Vaughn v. Payne, 75 SD 292, 63 NW2d

798 (1954)). While that remains an accurate statement of the law, we find *Dartt* is distinguishable from the present case. In *Dartt,* the offending driver, the defendant Berghorst, readily admitted he violated the safety statute at issue in that case, SDCL 32-26-6. Berghorst pleaded guilty to the violation. He admitted driving an 80,000 pound tractor-trailer into a moving snow cloud on the interstate. Berghorst clung to the wheel in total blindness for thirty seconds before he ran into the snowplow.

[¶20.] Under such circumstances a judge would direct a verdict for the injured plaintiff, unless legal excuse was shown. "Pleading guilty to such a violation does not conclusively establish the violation, but constitutes an admission against interest." *Dartt,* 484 NW2d 891, 894 at n3 (citing Weber v. Bernard, 349 NW2d 51, 54, n3 (SD 1984); Berlin v. Berens, 74 SD 429, 80 NW2d 79 (1956)). In the present case, Hall never admitted violating the statute, and argued that she prudently glanced to the left in order to ensure that the children on the sidewalk were not about to enter traffic.

[¶21.] Baddou also cites *McDonnel v. Lakings,* 78 SD 195, 99 NW2d 799 (SD 1980). However, like *Dartt, McDonnel* involved a case where the defendant readily admitted that he was following too closely. The defendant in *McDonnel* knew the street and neighborhood. He knew how the traffic lights changed. That defendant knew he was approaching a red light. The street included a warning sign reading "Traffic Signals Ahead." The defendant also knew that he was approaching the particular stop light where he struck the plaintiff. It was beyond contention that the defendant had violated the safety statute which commanded that a motor

vehicle "not follow another vehicle more closely than is reasonable and prudent, having due regard . . ." for traffic. SDCL 32-26-40 (Ch 170, Laws of 1955). Given the defendant's admission that the defendant was following too closely, the court in *McDonnel* found Lakings negligent as a matter of law. The Court said, "On the facts in the case, as we have already indicated, there was nothing to support a theory that the occurrence was unavoidable by defendant[.]" *McDonnel,* 78 SD 195, 200, 99 NW2d 788, 801 (quoting Ceeder v. Kowach, 17 IllApp2d 202, 149 NW2d 766, 767 1958)). This contrasts with Hall's glance at nearby children and justifies sending the issue to the jury to determine whether Hall's action was reasonable and prudent under the circumstances.

[¶22.]        Baddou also points to *Klarenbeek v. Campbell,* 299 NW2d 580, 581 (SD 1980) for the proposition that "when a moving vehicle strikes a stationary object which is not out of its proper place, a prima facie case of negligence is established." In *Klarenbeek,* however, one driver simply backed into another in a parking lot. *Id.* There were no facts in that case that might have excused the defendant's failure to maintain an adequate lookout and require a jury decision. The defendant in *Klarenbeek* did not claim any intervening circumstance such as obstructed view, an unexpected slippery spot, or children in the area.

[¶23.]        Baddou also directs our attention to *Weber*, 349 NW2d 51. In that case the defendant came upon an unexpected slippery spot on the off-ramp from the interstate and hit the rear end of plaintiff's vehicle. Weber appealed from an order denying her motion for judgment not withstanding the verdict and we affirmed. The *Weber* court reiterated that in such cases all legitimate inferences must be

#24690

indulged in favor of the nonmoving party. More importantly, the *Weber* court pointed out the essential difference between *McDonnel* and *Weber:*

> In *McDonnel,* however, the evidence clearly established that the road surface was dry; moreover, the defendant in that case admitted that he was following the plaintiff's car too closely. In the case before us, on the other hand, defendant, if his testimony and that of his witnesses is believed, was suddenly faced with unexpectedly slippery conditions upon reaching the exit ramp. It was for the jury to resolve the conflict in the testimony regarding weather and road conditions. If believed, defendant's evidence on this issue was sufficient to absolve him or liability for the collision, *for whether a driver meets conditions as an ordinarily prudent man would under similar circumstances is generally for the jury to determine."*

*Weber,* 349 NW2d 51, 53-4, (citing Boyd v. Alguire, 82 SD 684, 153 NW2d 192 (1967); Ziegler v. Ryan, 65 SD 110, 271 NW 767)). (emphasis added).

[¶24.]    After the instant case was submitted to the Court, we issued an opinion relevant to the issue of negligence per se in *Harmon v. Washburn*, 2008 SD 42, 751 NW2d 297. In that case, the plaintiff, Harmon, was legally passing Washburn, who turned directly into Harmon's path with little or no warning. Washburn admitted that she did not activate her turn signal any more than forty-four feet prior to the turn. Other witnesses said there was even less warning. SDCL 32-26-18.1 requires a driver to activate the turn signal at least one hundred feet before a turn: "[a] signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning."

-9-

[¶25.] Thus, by her own admission, Washburn violated the statutory safety mandate, which constituted negligence per se. We reversed the jury's verdict for entry of judgment in favor of Harmon. "Only in exceptional cases may the verdict be directed in favor of the party having the burden of proof." *Christenson*, 2004 SD 113, ¶ 24, 688 NW2d at 428. Admissions of statutory violations meeting the "exceptional" standard justify taking such cases from the jury.

[¶26.] In the present case, Hall never admitted that she was following Baddou too closely. She claimed that her action in momentarily turning to view nearby children was reasonable and prudent under the circumstances. The jury may well have had additional reasons to find for Hall, but at no time during the evidence was any admission made regarding the violation of a safety statute.

[¶27.] Baddou's reliance upon these cases for an absolute rule that any rear end collision is negligence per se is misplaced. Where the defendant admits a violation of a safety statute, negligence per se is established and the issue of liability should not be submitted to the jury. However, where the defendant has legitimately raised the issue of reasonableness, juries are best equipped to resolve the conflicts. We, therefore, continue to decline to adopt a strict rule or presumption of negligence in cases involving rear end collisions. *See Steffen,* 2006 SD 41, ¶ 9, 713 NW2d 614, 618. "[T]he mere fact an accident happened creates no inference that it was caused by someone's negligence." *Id.* (quoting *Carpenter,* 2000 SD 55, ¶ 14, 609 NW2d at 759 (citing Del Vechio v. Lund, 293 NW2d 474, 476-77 (SD 1980))).

[¶28.] In this case, the evidence at trial demonstrated that Hall was travelling at or below the speed limit. As Hall and the vehicle ahead of her driven by Baddou entered a school area, Hall slowed somewhat. At some point Hall looked left at some children on the sidewalk to make sure they were not crossing into her path. When Hall looked back at the road, she realized that Baddou had stopped to turn. Hall slammed on her brakes and veered right, striking the right rear bumper of Baddou's vehicle. Hall admitted that if she had never looked at the children, she could have avoided the accident. However, Hall did not admit a violation of the statute or that she had been "following too closely." There was no testimony regarding a safe following distance for vehicles at this speed. Hall thought she was "probably" a car length behind Baddou prior to the accident. No other witnesses testified that Hall was closer or further away.

[¶29.] Baddou testified that he never noticed Hall's vehicle following him, despite Hall's admission that she had followed him for three blocks. The jury may have inferred that if Hall was too close, Baddou would have noticed Hall in his rear view mirror. "[C]redibility is for the jury to decide." Artz v. Meyers, 1999 SD 156, ¶ 17, 603 NW2d 532, 536. Hall swerved and was almost able to avoid the collision altogether, thus creating another potential inference in her favor.

[¶30.] Viewing the evidence in the light most favorable to Hall, as we must, we cannot agree with Baddou's claim that Hall's acts constituted such obvious negligence per se as to justify taking the case away from the jury. "[I]ssues of negligence, contributory negligence, and proximate cause are ordinarily questions of fact and it must be a *clear* case before a trial judge is justified in taking these issues

from the jury." *Steffen,* 2006 SD 41, ¶ 26, 713 NW2d 614, 622 (*Zinter,* J., concurring in part and dissenting in part) (quoting Luther v. City of Winner, 2004 SD 1, ¶ 24, 674 NW2d 339, 348)). (emphasis added). "It is only when reasonable people can draw but one conclusion from facts and inferences that they become a matter of law and this rarely occurs." *Id.* (quoting Mitchell v. Ankney, 396 NW2d 312, 313 (SD 1986)).

[¶31.]     Finally, the jury was well aware that Hall was duty bound to have "due regard for the speed of such vehicles and the traffic upon and condition of the highway." SDCL 32-26-40. It may have considered Hall's concern, that children were about to become part of that traffic, as an event worthy of her momentary "due regard." Reasonable minds may differ, but we must resolve doubts in favor of the jury verdict.

## ISSUE TWO

[¶32.]     **Whether sufficient evidence existed to support the jury verdict for Hall.**

[¶33.]     A trial court has broad discretion in ruling upon a motion for new trial based upon a claim of insufficient evidence. All inferences are indulged in favor of the nonmoving party; if competent evidence exists to support the verdict, it will be upheld. *Rogen,* 2000 SD 51, ¶ 18, 609 NW2d 456, 460-61; SDCL 15-6-50(a); *Christenson,* 2004 SD 113, ¶ 22, 688 NW2d at 427. Hall placed the question of her reasonableness at issue, and presented competent evidence of her conduct at the time of the accident. *See* supra ¶¶ 28-29. Construing all facts in a light most favorable to Hall, sufficient evidence existed to support the jury verdict.

ISSUE THREE

[¶34.]     **Whether Baddou is entitled to a new trial based upon Hall's closing argument.**

[¶35.]     During closing argument, Hall's attorney commented upon the fact that the police report Baddou placed into evidence demonstrated that the officer at the scene had not issued a citation to either driver.  The trial judge originally overruled Baddou's timely objection, but after Hall concluded her argument the matter was revisited at the bench.  The judge reconsidered and then immediately gave a curative instruction.

[¶36.]     As we reaffirmed above in Issue Two, the issuance or non-issuance of a police citation has no bearing upon a case of disputed negligence other than as one piece of evidence for the jury's consideration.  *See supra* ¶ 20.   Juries are presumed to understand and abide court instructions.  *Kehn Ranch, Inc.*, 394 NW2d at 720; *Fjerstad,* 291 NW2d at 788; *Baker,* 77 SD at 580, 96 NW2d at 304.  "[A] general verdict will often be presumed to be based on that ground or theory upon which it can properly be sustained."  Allen v. McLain, 75 SD 520, 529, 69 NW2d 390, 395 (1955); Thomas v. Sully County, 2001 SD 73, ¶ 8-9, 629 NW2d 590, 592-3; Martinmaas v. Engelmann, 2000 SD 85, ¶ 72, 612 NW2d 600, 615-16 (Konenkamp, J., concurring in result.)

[¶37.]     In the instant case, the trial judge promptly corrected the problem presented by the comment made during closing argument by Hall's counsel with a curative instruction, which clearly addressed the problem.  Additionally, at the end of closing argument, the court further instructed the jury that the arguments of counsel were not to be considered as evidence.  We believe the curative instruction

#24690

and the pattern jury instruction on arguments of counsel, taken together, acted to cleanse the record of any alleged taint by the remarks of Hall's attorney during closing argument.  We must presume that the jury heard and obeyed these instructions.  *See Fjerstad*, 291 NW2d at 788 (citing Giltner v. Stark, 219 NW2d 700 (Iowa 1974)).  We, therefore, find no abuse of the court's discretion in denying a motion for new trial.

## ISSUE FOUR

[¶38.]    **Whether Baddou is entitled to a new trial based upon the trial court's refusal to instruct the jury on the claimed issue of lost earning capacity.**

[¶39.]    As we have noted above, the general jury verdict found no negligence on the part of defendant Hall.  We need not address which instructions should have been given on damages claims.

[¶40.]    Baddou has failed to show the circuit court committed any error, much less the required prejudicial error necessary to warrant a reversal on appeal.  The order denying Baddou's motion for directed verdict and motion for new trial is affirmed.

[¶41.]    BARNETT, Circuit Judge, for SABERS, Justice, disqualified.

[¶42.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.