1998 SD 45

**Blake GILKYSON, Plaintiff and Appellee,**

v.

**WHEELCHAIR EXPRESS, INC., Defendant and Appellant.**

No. 20102.

Supreme Court of South Dakota.

Argued March 25, 1998.

Decided May 13, 1998.

Rick Johnson of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, for plaintiff and appellee.

Gary J. Pashby of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1.] Wheelchair Express, Incorporated (Wheelchair Express) appeals the trial court's denial of its motion for new trial and judgment notwithstanding the verdict in a personal injury suit commenced after a single vehicle automobile accident in which Blake Gilkyson was a passenger. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On February 6, 1995, Blake Gilkyson (Gilkyson), a 68–year–old veteran of the Navy, was a wheelchair passenger in a specially-equipped van owned and operated by Wheelchair Express. The van was traveling south from Sioux Falls to Vermillion, South Dakota, along Interstate 29 when the van hit a patch of ice causing the driver to lose control and slide into the median. Gilkyson fell out of his wheelchair, even though the driver had previously used two straps to secure his wheelchair to the floor of the van. Two passing motorists stopped to render assistance and lifted Gilkyson back into his wheelchair. Gilkyson refused to go to the hospital and instead requested that he be taken to his son's home in Vermillion.

[¶ 3.] The following day Gilkyson went to the hospital. He had multiple contusions but no broken bones. Gilkyson complained of severe pain throughout his body. He brought a negligence suit against Wheelchair Express, claiming the driver should have secured his wheelchair to the vehicle using four, rather than two straps. At trial, he presented expert testimony to support this claim. Prior to the time of the accident, Gilkyson had been through several surgeries. Each knee and hip had been replaced and he suffered from a myriad of conditions and afflictions. Wheelchair Express argued that all of Gilkyson's injuries were preexisting, as Gilkyson had suffered from severe rheumatoid arthritis for over 40 years, and he had not suffered any permanent injuries. Gilkyson, countered this with expert testimony at trial tending to support his claims of permanent injuries and aggravation of preexisting injuries.

[¶ 4.] After a three-day trial, the jury awarded Gilkyson $50,000. Wheelchair Express' subsequent motion for new trial or

judgment notwithstanding the verdict was denied.

[¶ 5.] Wheelchair Express appeals raising the following issues for review:

1. Whether the trial court abused its discretion by denying Wheelchair Express' motion for a new trial.

2. Whether the trial court abused its discretion by denying Wheelchair Express' motion for judgment notwithstanding the verdict (n.o.v.).

## STANDARD OF REVIEW

[¶ 6.] We review a denial of motion for new trial by the trial court applying the following standard:

Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion. If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial. We determine that an abuse of discretion occurred only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion. Finally, we note a decision to grant a new trial stands on firmer footing than a decision to deny a new trial.

*Andreson v. Black Hills Power & Light Co.,* 1997 SD 12, ¶ 5, 559 N.W.2d 886, 887 (quoting *Schuldies v. Millar,* 1996 SD 120, ¶ 8, 555 N.W.2d 90, 95 (quoting *Junge v. Jerzak,* 519 N.W.2d 29, 31 (S.D.1994) (other citations omitted))); *see also State v. DeNoyer,* 541 N.W.2d 725, 733 (S.D.1995); *Bridge v. Karl's, Inc.,* 538 N.W.2d 521, 523 (S.D.1995).

[¶ 7.] We review a trial court's consideration of a motion for directed verdict and judgment notwithstanding the verdict under the following standard:

A motion for a directed verdict under SDCL 15-6-50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. Upon such a motion, the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse.

A motion for judgment n.o.v. is based on and relates back to a directed verdict motion made at the close of all the evidence. SDCL 15-6-50(b). Thus, the grounds asserted in support of the directed verdict motion are brought before the trial court for a second review. We review the testimony and evidence in a light most favorable to the verdict or the nonmoving party, "then without weighing the evidence [we] must decide if there is evidence which would have supported or did support a verdict[.]"

*Bland v. Davison County,* 1997 SD 92, ¶ 26, 566 N.W.2d 452, 460 (quoting *Sabag v. Continental,* 374 N.W.2d 349, 355 (S.D.1985)). We review the trial court's ruling on a directed verdict or judgment notwithstanding the verdict by the abuse of discretion standard. *Id.* (citing *Treib v. Kern,* 513 N.W.2d 908, 914 (S.D.1994)).

## ANALYSIS AND DECISION

[¶ 8.] **Whether the trial court abused its discretion by denying Wheelchair Express' motion for a new trial.**

[¶ 9.] Wheelchair Express claims that a new trial should have been granted under each of the following sections of SDCL 15-6-59(a), which provides in part:

(1) Irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;

. . .

(6) Insufficiency of the evidence to justify the verdict or other decision or that it is against law;

(7) Error of law occurring at the trial; provided, that in the case of claim of error, admission, rejection of evidence, or instructions to the jury or failure of the court to

make a finding or conclusion upon a material issue which had not been proposed or requested, it must be based upon an objection, offer of proof or a motion to strike.

[¶ 10.] *a. Irregularity in the Proceedings*

■ [¶ 11.] Wheelchair Express claims that a new trial should have been granted because there were two separate "irregularities in the proceedings" which denied it a fair trial. SDCL 15–6–59(a)(1). Wheelchair Express claims that on the second day of trial, when the trial court allowed those in the court room a "stretch break," it called "unnecessary attention [to the jury] that Gilkyson [was] confined to a wheelchair and [was] unable to stand."

■ [¶ 12.] However, Wheelchair Express did not preserve the record on this issue by stating a timely objection and therefore the issue has been waived.[1] This Court has long held that: "Generally, error must be brought to the attention of the trial court as soon as it is apparent and failure to object at a time when the court can take corrective action precludes appellate review." *State v. Spiry*, 1996 SD 14, ¶ 15, 543 N.W.2d 260, 263 (quoting *In re A.I.*, 289 N.W.2d 247, 249 (S.D.1980)). *See also In re Sioux Valley Hosp. Ass'n*, 513 N.W.2d 562 (S.D.1994); *In re Adoption of Baade*, 462 N.W.2d 485, 488 (S.D.1990).

■ [¶ 13.] Wheelchair Express next claims it was denied a fair trial when the trial judge allegedly made an improper remark and laughed out loud after an excerpt from a deposition was read to the jury. This claim is wholly unsupported by the trial record. As with the first alleged error, Wheelchair Express again failed to object after the trial judge allegedly acted improperly and therefore the issue has also been waived.[2] *Spiry, supra.*

[¶ 14.] The affidavits containing Wheelchair Express' version of the objectionable facts were filed well after the completion of the trial, thus denying the plaintiff the chance to be timely heard on the matter. In addition, it denied the trial court the opportunity to consider an objection and take whatever measures it felt were necessary, if any, to correct the situation. After the verdict had been received and the jury discharged, any remedial action by the trial court short of ordering a new trial became an impossibility. There is no acceptable reason cited by Wheelchair Express that it could not have timely made its objection on the record. Wheelchair Express contends it did not object because it did not want to draw jury attention to the alleged misconduct. However, the concern of prejudicing the jury with its objection overlooks that proceedings could

---

1. Even if Wheelchair Express had properly preserved the record for appeal, we would reject such a claim under the present facts. Here, the jury had observed Gilkyson for two days prior to the alleged "irregularity." It had seen him testify. The jury was well aware that Gilkyson was confined to a wheelchair at that point. We fail to discern any resultant prejudice from this "stretch break." To the contrary, occasional breaks in long and at times tedious trial days are permissible and may even serve the useful function of reviving individual juror attention. It is neither realistic nor practical for a jury to remain seated for undue lengths of time. It is well within the discretion of the trial judge to allow reasonable breaks, even in personal injury cases where the extent of injuries are often vigorously challenged by both parties.

2. By affidavit, authored by Wheelchair Express' counsel 21 days after the completion of the trial, it now contends the trial judge exclaimed, "whoa" and laughed out loud after hearing the following portion of its driver's deposition testimony.

Q. When they say Wheelchair Express, that's the only kind of patients they really deal with?
A. No. You haul nut cases down to the bug house in Vermillion.

While we note that improper conduct by the trial judge may indeed be grounds for a new trial,

Motions raising this ground happily are rare and a new trial is not required if the judge's behavior has not made the trial unfair. The moving party must meet a heavy burden to prevail on the ground of judicial misconduct. One court has stated that in order for a judge's comments on evidence to rise to a level requiring a new trial, they must "bec[o]me so one sided as to become advocacy." Another court has commented that "[a]ctive participation by a ... judge in trial proceedings ... is in itself neither improper nor unfair."

11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2809 (1995).

have been held in chambers or outside the presence of the jury.[3]

[¶ 15.] *b. Sufficiency of the Evidence*

 [¶ 16.] Wheelchair Express argues the evidence was insufficient to support the $50,000 verdict and therefore the trial court erred by not granting its motion for new trial. SDCL 15–6–59(a)(6).

> It is a well-established rule in South Dakota that a trial court has broad discretion to grant a new trial on the ground of insufficient evidence. *Lewis v. Storms*, 290 N.W.2d 494, 497 (S.D. 1980). Nevertheless, a jury's verdict should not be set aside "except in extreme cases where it is the result of passion or prejudice or the jury has palpably mistaken the rules of law...." *Stoltz v. Stonecypher*, 336 N.W.2d 654, 657 (S.D.1983) (citing *Simons v. Kidd*, 73 S.D. 306, 42 N.W.2d 307, 309 (1950)). A verdict should only be set aside if the jury's conclusion was unreasonable and a clear illustration of its failure to impartially apply "the reasoning faculty on the facts before them." *Lewis*, 290 N.W.2d at 497.

*LDL Cattle Co. Inc. v. Guetter*, 1996 SD 22, ¶ 13, 544 N.W.2d 523, 526–27. We review the evidence in a "light most favorable to the verdict" to determine whether the trial court has abused its discretion. *Id.* (citing *Stoltz*, 336 N.W.2d at 657).

[¶ 17.] It was undisputed at trial that Gilkyson had suffered from poor health prior to the accident. His pre-accident medical conditions include 40 years of debilitating rheumatoid arthritis, which has produced multiple deformities including gnarled hands and ankylosis[4] of the cervical spine. His hip and knee joints have been replaced. After the 1979 knee replacement operation, he was diagnosed with an ischemic condition. This condition is noted by discoloration in the legs and results in longer healing times for lesions. He fell down stairs in 1983 and complained about pain in his neck and back. In 1992, he was diagnosed with hypertension. He had been confined to a wheelchair prior to the accident in 1995.

[¶ 18.] Wheelchair Express argued at trial and presented supporting evidence that Gilkyson suffered no permanent injuries as a result of the accident. However, Gilkyson presented testimony to the contrary and also that his pre-existing conditions were aggravated as a result of the accident. One doctor testified that the accident aggravated the arthritic condition Gilkyson suffered from and was the cause of skin lesions and headaches. Another doctor testified the accident caused bone spurs on Gilkyson's diseased spine to dig into and injure nerve roots in his back. Whether Gilkyson presented evidence and expert testimony at trial sufficient to support his claim of permanent injury became a question for the jury.

 [¶ 19.] "If the jury's verdict can be explained with reference to the evidence, rather than by juror passion, prejudice or mistake of law, the verdict should be affirmed." *Miller v. Hernandez*, 520 N.W.2d 266, 271 (S.D.1994) (citing *Itzen v. Wilsey*, 440 N.W.2d 312, 314 (S.D.1989)). "The trial court is best able to judge whether the damages awarded by a jury are the product of passion or prejudice." *Kusser v. Feller*, 453 N.W.2d 619, 621 (S.D.1990). Wheelchair Express simply restates the evidence in its favor, but fails to explain how the jury would have acted under passion or prejudice. As an appellate tribunal, we are precluded from

---

3. While Wheelchair Express may claim surprise at the trial court's alleged comment, it hardly can claim the same for the statements made by the witness in a deposition. Wheelchair Express admitted at oral argument it sought to locate the driver and have him appear at trial to testify in part to hopefully keep these unfortunate comments from being presented to the jury. In addition, Wheelchair Express certainly had ample opportunity to bring on a motion to strike these comments by the witness and failed to do so. As we noted in *Zepp v. Hofmann*, 444 N.W.2d 28, 33 (S.D.1989):

> It is clear under the language of SDCL 15–6–32(d)(3)(A) and (B) that errors should be corrected prior to reading the deposition at trial. The ideal in any trial is to keep improper and inflammatory questions or evidence from the jury. Consistent with this goal, a deposition which contains questions or evidence, which are properly objected to at the deposition, should be stricken prior to reading to the jury.

4. Condition where the spine transforms from separate vertebrae into a solid column.

retrying the facts. We can and do decide that Gilkyson presented sufficient evidence to sustain the verdict. Accordingly, we find no abuse of discretion by the trial court in denying the motion for new trial on this basis.

[¶ 20.] *c. Jury Instructions*

■ [¶ 21.] Wheelchair Express contends Gilkyson did not suffer any permanent injuries as a result of the accident and therefore the trial court erred in giving Instruction 34 (based upon South Dakota Pattern Jury Instruction Numbers 30–04 and 30–06) which provided:

> If you decide the plaintiff is entitled to recover you must then fix the amount of money which will reasonably and fairly compensate the plaintiff for any of the following elements of loss or harm suffered in person or property proved by the evidence to have been proximately caused by the negligence of the defendant, whether such loss or harm could have been anticipated or not, namely:
>
> * The nature, extent, and duration of the injury.
> * The disability.
> * The pain and suffering, mental anguish, and loss of capacity of the enjoyment of life experienced in the past and reasonably certain to be experienced in the future as a result of the injury.
> * *The reasonable expense of necessary medical care, treatment and services received and the value of the reasonable expense of medical care, treatment, and services reasonably certain to be received in the future.*
>
> Whether any of these elements of damages have been proved by the evidence is for you to determine. Your verdict must be based on evidence and not upon speculation, guesswork, or conjecture.

(Emphasis added).

[¶ 22.] We hold this instruction proper under the facts of this case, as we have already decided there was sufficient evidence con-

cerning the claim of permanent injuries to send that issue to the jury which would include consideration of an award of future medical expenses. *See Kuper v. Lincoln–Union Elec. Co.,* 1996 SD 145, ¶ 32, 557 N.W.2d 748, 758 (holding "[o]n issues supported by competent evidence in the record, the trial court should instruct the jury" (citation omitted)). At that point, it becomes a jury decision as to what, if any, future damages are appropriate to award Gilkyson.[5]

[¶ 23.] The dispute over the matter of permanent injuries aside, the jury verdict can be supported by the evidence of pain and suffering sustained by Gilkyson. This award was based on a general jury verdict. As such, there is no itemization as to compensation awarded by the jury for individual elements of damage claimed by Gilkyson. Even if there were no permanent injuries, and the trial court erred in giving this instruction, in the absence of a special interrogatory, there would be no reversible error. The $50,000 general verdict is sustainable as long as it is supported by evidence of sufficient pain and suffering. *See Andreson v. Black Hills Power & Light Co.,* 1997 SD 12, ¶¶ 9, 11, 559 N.W.2d 886, 888, 889:

> Since a general verdict was given, mere speculation remains as to the categorization of damages.... [D]ue to the general verdict, we are uninformed as to whether the jury actually awarded damages for pain and suffering. *See Bankwest, Inc. v. Valentine,* 451 N.W.2d 732, 736 (S.D.1990) (noting the difficulty of determining how the jury reached a verdict when a general verdict is used, and holding that when "a verdict is susceptible to more than one construction, the construction which sustains the verdict must be applied.").

*See also Wang v. Wang,* 440 N.W.2d 740, 745 (S.D.1989).

[¶ 24.] In conclusion we affirm the trial court's order denying Wheelchair Express's motions for new trial and judgment notwithstanding the verdict.

---

5. The above rationale and holding applies to Wheelchair Express' second issue, whether the trial court abused its discretion in denying its

motion for judgment notwithstanding the verdict. *Andreson, supra.*

[¶ 25.] MILLER, C.J., and SABERS, AMUNDSON, and KONENKAMP, JJ., concur.

